PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

بسم الله الرحمٰن الرحيم

12/12/25

*2025 DEC 30  P 3:07*

*L V J*

**Bankruptcy Case Number: 24-13523-RG**

**Notice of Objection to Motion for Relief of Counsel: Nicholas Fitzgerald**

Dear Honorable Judge,

In the matter of this motion and/or objection, I am representing myself **pro se** and therefore doing the best I can in these extremely difficult circumstances. As I am **not** an attorney, I apologize if I am missing any specific legal terms and/or required language and/or required forms.

I strongly **OBJECT** to Mr. Fitzgerald's motion to be relieved as counsel. There are a variety of reasons which I will list here, to the best of my ability and recollection.

**DETAILS:**

1. **Ms. Khan denies any wrongdoing and/or fraudulent activity.** Ms. Khan is a woman of integrity with a stellar reputation in corporate America. Ms. Khan has never faced such damaging and defamatory charges from anyone, much less her own counsel.

2. **Ms. Khan has been significantly harmed by delays from Garden State Financial and/or the Trustee.**

3. Ms. Khan requests Garden State Financial and/or the Trustee be required to provide Pay-Off amounts in a timely fashion i.e. within 3 (THREE) business days from date of request. The payoff request was made Nov 24, 2025, 10:01 AM i.e. prior to Holiday season.

4. The accusations made by Mr. Fitzgerald and/or his staff are blatantly false, defamatory, and hurtful. Mr. Fitzgerald has a history of fabrications and this is one such case of fabrication. There is no evidence that Ms. Khan committed fraud.

5. Ms. Khan has had consultations with several bankruptcy attorneys. Due to Mr. Fitzgerald's reputation, she has found it **nearly impossible to find a credible and reputable attorney to take over the case after the mess that Mr. Fitzgerald has made of it.**

6. Only after retaining Mr. Fitzgerald, did Ms. Khan find out that he has a negative reputation in the NJ real estate and legal community(ies). Other attorneys have called him "cantankerous, technology illiterate, cantankerous, and unreasonable."

7. **If Mr. Fitzgerald had disclosed his subpar reputation, Ms. Khan would not have retained him in April, 2024 i.e. almost TWO (2) years ago.**

8. **Mr. Fitzgerald has made it impossible for Ms. Khan to retain new counsel. That is the only reason Ms. Khan continued to take Mr. Fitzgerald's constant beratement, unprofessionalism, and inadequate counsel.**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright © & Trademark™ & Patented 2020: ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

9.

10. Madison Management and/or Garden State and/or Attorneys for Garden State stalled delivering the payment for weeks.

11. The Pay-Off amount was not sent by Madison Management until almost Christmas, 12/18/2025.

12. At the rate of 40.95 per day included in the Pay-Off Statement, Ms. Khan should be credited $982.80 for the considerable delay in providing Pay-Off Amount. This is calculated by $40.95 * 24 days (date difference from 11/24/2025 to 12/18/2025.)

13. The "Unpaid Charges" in the amount of $1779.20 should be credited to Ms. Khan's account. These charges are from the previous mortgage company and are not part of Ms. Khan's mortgage principal.

14. The "Other Fees" in the amount of $225.00 should also be credited to Ms. Khan due to the significant delay in processing the request.

15. Therefore, the Pay-Off Amount should be:

16. Madison Management stated the Garden State Financial never responded to their request to review. According to their contract, Madison Management is authorized to release the Final Pay-Off Amount, without OFFICIAL APPROVAL from GARDEN STATE. **This is important to note in case they attempt to dispute the amount at a later date.**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright © & Trademark™ & Patented 2030, ALL RIGHTS RESERVED.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



Tel: 877-563-4164
Fax: 877-563-4161
Email: info@madisonmanagement.net
Web: www.madisonmanagement.net

12/12/2025



Nuzhet Khan

**PAYOFF STATEMENT**

Dear Nuzhet Khan

You are authorized to use the following amounts to payoff the above-mentioned loan.  All necessary legal documents will be forwarded to the trustee or County Recorder for Full Reconveyance or Satisfaction upon receipt of payment in full.

| Payoff Date | 01/31/2026 |
|---|---|
| Maturity Date | 07/01/2033 |
| Next Payment Due | 01/01/2026 |
| Interest Rate | 3.750% |
| Interest Paid-To Date | 12/01/2025 |
| Principal Balance | $393,153.02 |
| Unpaid Interest | $0.00 |
| Accrued Interest From 12/01/2025 To 01/31/2026 | $2,457.21 |
| Unpaid Late Charges | $0.00 |
| Accrued Late Charges | $0.00 |
| Unpaid Charges   *For additional details see itemization attached | $1,779.20 |
| Prepayment Penalty | $0.00 |
| Other Fees *For additional details see itemization attached | $225.00 |
| Payoff Amount | $397,614.43 |

Please add **$40.95** for each additional day past **01/31/2026**.

**PLEASE CALL TO VERIFY PAYOFF AMOUNT AND FEES DUE, PRIOR TO ISSUING PAYMENTS.**

This payoff statement will be of no force and effect, and the above figures may not be relied upon, after the Payoff Quote Expiration Date. We reserve the right to amend this statement should any changes occur that would increase the total amount for payoff.  **Please note that this payoff statement expires on 02/01/2026**, at which time you are instructed to contact this office for additional instructions (FORWARDING FEES ARE DUE EVEN UPON CANCELLATION OF YOUR ESCROW).

All payoffs made pursuant to a payoff statement expiring on a date which is a Saturday, Sunday or federal holiday must be made on or before the business day immediately preceding such expiration date in order to be credited timely.  Delivery of funds on a subsequent business day will not be accepted and may cause a shortage in the payoff amount.

For amortized loans, all monthly interest calculations must be made using a thirty (30) day calendar month and a three hundred sixty (360) day calendar year. For interest only loans, interest calculations for any one (1) month must be based on the actual days and a three hundred sixty-five (365) day year.  Interest must be remitted THROUGH the date such funds are received by **Madison Management Services, LLC**

Make disbursement check payable to: **Madison Management Services, LLC**
**4600 KIETZKE LN, STE K225, RENO, NV 89502**

**(ONLY CERTIFIED FUNDS, WIRE TRANSFER OR A TITLE COMPANY CHECK WILL BE ACCEPTED)**

4600 Kietzke Lane, Ste K-225, Reno, NV 89502

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances, it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 119505312.

Page 2:

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark™ & Patented 2026; ALL RIGHTS RESERVED.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



Tel: 877-563-4164
Fax: 877-563-4161
Email: info@madisonmanagement.net
Web: www.madisonmanagement.net

### ITEMIZATION OF UNPAID CHARGES

| Date | Description | Interest Rate | Unpaid Balance | Accrued Interest | Total Due |
|------|-------------|---------------|----------------|------------------|-----------|
| 07/31/2021 | Unpaid late charge from previous servicer | 0.000% | $1,779.20 | $0.00 | $1,779.20 |
| | | | | Total | $1,779.20 |

### ITEMIZATION OF OTHER FEES

| Description | Amount |
|-------------|--------|
| Lien Release Document Preparation Fee | $150.00 |
| Wire Fee | $15.00 |
| Admin Fee | $50.00 |
| Postage/Electronic Submission Fees | $10.00 |
| Total | $225.00 |

4600 Kietzke Lane, Ste K-225, Reno, NV 89502

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone
whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances,
it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 119505312.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® © Trademark™ & Patented 2019. ALL RIGHTS
RESERVED.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



Tel: 877-563-4164
Fax: 877-563-4161
Email: info@madisonmanagement.net
Web: www.madisonmanagement.net

### PAYOFF REMITTANCE INFORMATION

Your payoff remittance must be in the form of a wire title company check or certified funds. You must reference the payoff remittance and include the borrower's name(s), subject property complete address and loan number as set forth above.

### WIRE TO:

C/O Madison Management Services, LLC
JPMORGAN CHASE BANK, NA
10430 HIGHLAND MANOR DR
TAMPA, FL 33610
ABA: 021000021
Account #: 662582188
Loan Number: 4082266711
Property Address: 142 Romaine Ave Jersey City, NJ 7306

FOR ALL FUNDS DUE FROM BORROWER – FUNDS MUST BE MADE VIA WIRE TRANSFER
PRIOR TO CLOSING – PLEASE DO NOT SEND A WIRE WITHOUT VERBALLY VERIFYING WIRING INSTRUCTIONS WITH OUR OFFICE DUE TO FRAUD.
We reserve the right to correct any portion of this Payoff Statement at any time. All balances may change if any transactions occur after the above-written payoff statement date. If, and prior to the application of payoff funds received, Madison Management Services, LLC has received any payment on this account within the prior thirty (30) days and applied such payment to the borrower's account for the purpose of issuing this Payoff Statement and if, for any reason whatsoever, such funds are reversed including, without limitation, insufficient funds or a stop payment being placed on a check, this Payoff Statement shall be deemed invalid, null and void and of no force or effect and a new Payoff Statement must be obtained from Madison Management Services, LLC in order to reflect the correct amount due and owing.

Upon receipt of your payoff remittance, Madison Management Services, LLC will verify all the amounts due and in the event that the payoff amount received is less than the total amount necessary to satisfy the loan, Madison Management Services, LLC will return the funds with a new Payoff Statement and continue to accrue interest on the loan.

Within thirty (30) calendar days after payoff, any overpaid amount and/or remaining escrow funds will be remitted to the borrower of record, contingent upon clearance of all funds remitted. **Unless an address is provided where such refund should be sent, the refund will be sent to the last known address of the borrower of record.**

### RELEASE OF LIEN

Please provide book, page and/or instrument number, legal description and original lender of record for processing release of lien upon receipt of funds sufficient to pay off the loan in full.

Issuance of this Payoff Statement does not suspend the contractual requirement to make loan payments when due in accordance with the terms and conditions of the note and security instrument. Please note that Madison Management Services, LLC does **NOT** accept any payments remitted via any type of "Auto-Draft", "Auto-Payment", or ACH draft without prior written agreement therefore specifically with Madison Management Services, LLC.

Issuance of this Payoff Statement will not future escrow disbursements, if applicable. Property taxes or insurance premiums will still be made by Madison Management Services, LLC even after this Payoff Statement is issued, if required under any agreements with respect to escrow accounts. If such disbursement create escrow advances and change the amount due to satisfy the loan in full, such advances must be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust. If, due to the borrower's failure to provide proof of coverage, Madison Management Services, LLC has exercised the right to obtain a property insurance policy on borrower's behalf, SUCH POLICY SHALL BE CANCELLED EFFECTIVE ON THE DATE THE LOAN IS PAID IN FULL.

If account is past due, collection expenses and legal fees may be accruing.

Please direct all questions to accounting at 877-563-4164,

Sincerely  **Madison Management Services, LLC**

4600 Kietzke Lane, Ste K-225, Reno, NV 89502

This communication is from a debt collector but does not imply that Madison Management Services is attempting to collect money from anyone
whose debt has been discharged pursuant to (or who is under the protection of) the bankruptcy laws of the United States; in such instances,
it is intended solely for informational purposes and does not constitute a demand for payment. North Carolina Collection Agency Permit # 119505312.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright & Trademark & Patent 2014. ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

17. The Reinstatement schedule in 2020 was:

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ©® Trademark™ & Patent ℗ 2023 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

## LOAN REINSTATEMENT CALCULATION

**COMPANY**

Madison Management Services, LLC
4600 Kietzke Lane, Ste K-225
Reno NV 89502
(877) 563-4164

| ACCOUNT NO. | 6711 |
|---|---|
| STATEMENT DATE | 8/8/2023 |

**SUMMARY**

| | |
|---|---|
| Unpaid Installments | $128,098.80 |
| Accrued Late Charges | $6,405.12 |
| Unpaid Late Charges | $0.00 |
| Unpaid Charges | $1,779.20 |
| Unpaid Interest | $0.00 |
| **To Reinstate as of 8/31/2023, Please Pay:** | **$136,283.12** |

Property: 142 Romaine Ave Jersey City NJ 7306

**BORROWER**

Nuzhet Khan
~~[redacted]~~
~~[redacted] 07306~~

### ITEMIZATION OF UNPAID INSTALLMENTS

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Apply To Trust | Other | Unpaid Interest | Unpaid Interest Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Balance Forward: | | $0.00 | $442,324.46 |
| 9/1/2020 | 3.750% | $3,558.30 | $2,176.04 | $1,382.26 | $0.00 | $0.00 | $0.00 | $0.00 | $440,148.42 |
| 10/1/2020 | 3.750% | $3,558.30 | $2,182.84 | $1,375.46 | $0.00 | $0.00 | $0.00 | $0.00 | $437,965.58 |
| 11/1/2020 | 3.750% | $3,558.30 | $2,189.66 | $1,368.64 | $0.00 | $0.00 | $0.00 | $0.00 | $435,775.92 |
| 12/1/2020 | 3.750% | $3,558.30 | $2,196.50 | $1,361.80 | $0.00 | $0.00 | $0.00 | $0.00 | $433,579.42 |
| 1/1/2021 | 3.750% | $3,558.30 | $2,203.36 | $1,354.94 | $0.00 | $0.00 | $0.00 | $0.00 | $431,376.06 |
| 2/1/2021 | 3.750% | $3,558.30 | $2,210.25 | $1,348.05 | $0.00 | $0.00 | $0.00 | $0.00 | $429,165.81 |
| 3/1/2021 | 3.750% | $3,558.30 | $2,217.16 | $1,341.14 | $0.00 | $0.00 | $0.00 | $0.00 | $426,948.65 |
| 4/1/2021 | 3.750% | $3,558.30 | $2,224.09 | $1,334.21 | $0.00 | $0.00 | $0.00 | $0.00 | $424,724.56 |
| 5/1/2021 | 3.750% | $3,558.30 | $2,231.04 | $1,327.26 | $0.00 | $0.00 | $0.00 | $0.00 | $422,493.52 |
| 6/1/2021 | 3.750% | $3,558.30 | $2,238.01 | $1,320.29 | $0.00 | $0.00 | $0.00 | $0.00 | $420,255.51 |
| 7/1/2021 | 3.750% | $3,558.30 | $2,245.00 | $1,313.30 | $0.00 | $0.00 | $0.00 | $0.00 | $418,010.51 |
| 8/1/2021 | 3.750% | $3,558.30 | $2,252.02 | $1,306.28 | $0.00 | $0.00 | $0.00 | $0.00 | $415,758.49 |
| 9/1/2021 | 3.750% | $3,558.30 | $2,259.05 | $1,299.25 | $0.00 | $0.00 | $0.00 | $0.00 | $413,499.44 |
| 10/1/2021 | 3.750% | $3,558.30 | $2,266.11 | $1,292.19 | $0.00 | $0.00 | $0.00 | $0.00 | $411,233.33 |
| 11/1/2021 | 3.750% | $3,558.30 | $2,273.20 | $1,285.10 | $0.00 | $0.00 | $0.00 | $0.00 | $408,960.13 |
| 12/1/2021 | 3.750% | $3,558.30 | $2,280.30 | $1,278.00 | $0.00 | $0.00 | $0.00 | $0.00 | $406,679.83 |
| 1/1/2022 | 3.750% | $3,558.30 | $2,287.43 | $1,270.87 | $0.00 | $0.00 | $0.00 | $0.00 | $404,392.40 |
| 2/1/2022 | 3.750% | $3,558.30 | $2,294.57 | $1,263.73 | $0.00 | $0.00 | $0.00 | $0.00 | $402,097.83 |
| 3/1/2022 | 3.750% | $3,558.30 | $2,301.74 | $1,256.56 | $0.00 | $0.00 | $0.00 | $0.00 | $399,796.09 |
| 4/1/2022 | 3.750% | $3,558.30 | $2,308.94 | $1,249.36 | $0.00 | $0.00 | $0.00 | $0.00 | $397,487.15 |
| 5/1/2022 | 3.750% | $3,558.30 | $2,316.15 | $1,242.15 | $0.00 | $0.00 | $0.00 | $0.00 | $395,171.00 |
| 6/1/2022 | 3.750% | $3,558.30 | $2,323.39 | $1,234.91 | $0.00 | $0.00 | $0.00 | $0.00 | $392,847.61 |
| 7/1/2022 | 3.750% | $3,558.30 | $2,330.65 | $1,227.65 | $0.00 | $0.00 | $0.00 | $0.00 | $390,516.96 |
| 8/1/2022 | 3.750% | $3,558.30 | $2,337.93 | $1,220.37 | $0.00 | $0.00 | $0.00 | $0.00 | $388,179.03 |
| 9/1/2022 | 3.750% | $3,558.30 | $2,345.24 | $1,213.06 | $0.00 | $0.00 | $0.00 | $0.00 | $385,833.79 |
| 10/1/2022 | 3.750% | $3,558.30 | $2,352.57 | $1,205.73 | $0.00 | $0.00 | $0.00 | $0.00 | $383,481.22 |
| 11/1/2022 | 3.750% | $3,558.30 | $2,359.92 | $1,198.38 | $0.00 | $0.00 | $0.00 | $0.00 | $381,121.30 |
| 12/1/2022 | 3.750% | $3,558.30 | $2,367.30 | $1,191.00 | $0.00 | $0.00 | $0.00 | $0.00 | $378,754.00 |
| 1/1/2023 | 3.750% | $3,558.30 | $2,374.69 | $1,183.61 | $0.00 | $0.00 | $0.00 | $0.00 | $376,379.31 |
| 2/1/2023 | 3.750% | $3,558.30 | $2,382.11 | $1,176.19 | $0.00 | $0.00 | $0.00 | $0.00 | $373,997.20 |
| 3/1/2023 | 3.750% | $3,558.30 | $2,389.56 | $1,168.74 | $0.00 | $0.00 | $0.00 | $0.00 | $371,607.64 |
| 4/1/2023 | 3.750% | $3,558.30 | $2,397.03 | $1,161.27 | $0.00 | $0.00 | $0.00 | $0.00 | $369,210.61 |
| 5/1/2023 | 3.750% | $3,558.30 | $2,404.52 | $1,153.78 | $0.00 | $0.00 | $0.00 | $0.00 | $366,806.09 |
| 6/1/2023 | 3.750% | $3,558.30 | $2,412.03 | $1,146.27 | $0.00 | $0.00 | $0.00 | $0.00 | $364,394.06 |
| 7/1/2023 | 3.750% | $3,558.30 | $2,419.57 | $1,138.73 | $0.00 | $0.00 | $0.00 | $0.00 | $361,974.49 |
| 8/1/2023 | 3.750% | $3,558.30 | $2,427.13 | $1,131.17 | $0.00 | $0.00 | $0.00 | $0.00 | $359,547.36 |
| | | $128,098.80 | $82,777.10 | $45,321.70 | $0.00 | $0.00 | $0.00 | | |

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ? & Trademark™ & Patented 2026 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

18. Ms. Khan is a trusted advisor for many senior executives in Fortune 500 companies. She has strong ties to several well-known scholars who could vouch for her character. Those that personally know Ms. Khan would describe her as honest, trustworthy, highly educated, and passionate about empowering young children.

19. Ms. Khan requests the Court **Subpoena Realtor Mina Youssef** for his statement(s) and/or first-hand account of his testimony. Mr. Youssef was previously approved as the Realtor for Ms. Khan. However, he fell far short of his responsibilities. He sabotaged the sale and refused to show the property while it was under his MLS listing. Once in the MLS, another realtor is UNABLE to list the property without an "Unconditional Release" from Mr. Youssef. Mr. Youssef stalled and delayed **releasing the property within MLS for over 30 days. This caused significant harm to Ms. Khan financially and emotionally.**

20. Because the property was most recently listed by Mr. Youssef, Ms. Khan reached out to him to get a new listing agreement to satisfy the Trustee's mandate to obtain a realtor. Mr. Youssef agreed and signed a new listing agreement set to expire on 12/31/2025.

21. Ms. Khan had repeatedly requested **Mr. Fitzgerald request and extension of the arbitrary deadline to secure a realtor**. This deadline is in the midst of the December Holiday season i.e. a time when most realtors and public, in general, are on vacation and/or not pursuing new business until the New year.

22. Mr. Fitzgerald flat out refused to make the request. Mr. Fitzgerald also berated Ms. Khan for asking for an extension. Note: **Mr. Fitzgerald is NOT a realtor, is NOT aware of the current real estate market, and is NOT an expert in buying or selling property in Jersey City, NJ in 2025.** Meaning, the market is volatile with the current political and financial climate. Even realtors are struggling to stay on top of changing trends, mortgage rates, etc.

23. Therefore, Mr. Fitzgerald should NOT be in a position to make decisions on behalf of Ms. Khan and/or conditions for the sale of the property.

24. Mr. Fitzgerald had previously promised Ms. Khan that she could list herself, save the realtor's commissions fees and would have TWELVE (12) months to sell.

25. Ms. Khan, working with For Sale by Owner, went through length negotiations to receive a <u>**CASH OFFER**</u> of <u>**$587,000 by "Luis buys homes." This offer was sent to Mr. Fitzgerald and Mr. Wallace (Closing Attorney). This offer was pending Pay-Off Amount to be sent by Garden State Financial.**</u>

26. **Ms. Khan requested the assistance of Mr. Fitzgerald to obtain information to quickly sell the property.** Mr. Fitzgerald stated he chooses not to provide any assistance.

27. Mr. Fitzgerald stated that it would be beneficial for Ms. Khan's bankruptcy case to be dismissed. This signaled to Ms. Khan that Mr. Fitzgerald was trying to abscond from his duties has her attorney.

28. **The property is located 0.8 miles i.e. less than a mile from Mr. Fitzgerald's Office.** Had Mr. Fitzgerald had a sense of urgency about the deadline, he could have requested Ms. Khan meet in person at his office. Mr. Fitzgerald chose not to do so and instead sent his motion via USPS and subject to being lost in transit.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright © & Trademark™ & Patent © 2020 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



29. Ms. Khan requests the Court **Subpoena Jeremy Wallace** for his statement(s) and/or first-hand account of his testimony. Mr. Wallace was previously approved by the Trustee and is retained as the **Closing Attorney. Mr. Wallace** was present during the in-person meeting in December (via conference call.)

30. Wallace was previously approved by the Trustee and is retained as the **Closing Attorney. Mr. Wallace** was present during the in-person meeting in December (via conference call.)

31. Ms. Khan requests the Court **Subpoena Realtor David Bistany** for his statement(s) and/or first-hand account of his testimony. Mr. Bistany is a close friend of Mr. Wallace's and came highly recommended. Mr. Bistany was the listing agent for the property in 2023 i.e. BEFORE the bankruptcy filing. Mr. Bistany committed numerous realtor violations while holding the listing. These included, and are not limited to, property disposal that was not authorized, unauthorized pictures of the property, unauthorized entry by those not pre-approved as was requested by Ms. Khan. Mr. Bistany also held the property hostage in MLS for SIX MONTHS (6) after they both had mutually agreed to terminate the contract.

32. Other realtors see Mr. Bistany's listing and constantly question what happened with his listing. Ms. Khan has to repeatedly explain Mr. Bistany's violations and defend herself against disparaging remarks Mr. Bistany has made to several in the realtor community in Jersey City, NJ. The NJ real estate market is intimate in the sense that every vaguely knows the main realtors, brokers, attorneys, etc. Because Mr. Bistany continues to disparage Ms. Khan even TWO YEARS (2) after he was terminated, it is difficult for Ms. Khan to find a credible realtor with the necessary experience and networks for a successful sale.

33. Ms. Khan **tried to replace Mr. Fitzgerald as counsel in 2024**. However, several credible bankruptcy attorneys declined to take the case because of the state in which Mr. Fitzgerald created and left it.

34. Mr. Fitzgerald **accepted the case for a flat fee**. Within a few short months and once he'd locked Ms. Khan into a binding retainer, Mr. Fitzgerald started **behaving erratically and appeared to have mental decline.**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark™ & Patent© 2025 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

35. The office of Fitzgerald & Associates is woefully out of date and lacking current technology. Mr. Fitzgerald refuses to send documents electronically and instead relies on USPS physical mail. This includes CRITICAL DEADLINES that may have passed and/or documents getting lost in the mail.

36. Mr. Fitzgerald, once retained, **made the case toxic**. Other attorneys refuse to touch it. It's similar to a HAZMAT site. Once polluted, no other builder wants to take on the risk and/or the liability that would be involved to clean it up. Similarly, after making a toxic situation, Mr. Fitzgerald is trying to take my money and run.

37. **Mr. Fitzgerald flat out refused to provide an accounting of his hours. When requested, he claimed Ms. Khan requested this just to "screw him around."**

38. Ms. Corbin identified herself as a paralegal; however, her email signature states "Legal Assistant". There is a difference between them, one requiring more education. According to Reuters, a trusted resource:

**What does a legal assistant do?**
In general, legal assistants' work is geared toward administrative and organizational tasks that help keep a law office running smoothly. These tasks might include setting up appointments, answering the phone, preparing documents, and keeping track of other day-to-day considerations. Being detail-oriented is a necessity for a legal assistant, and individuals who can manage several types of tasks at once are strongly suited for the position.

To that end, legal assistants' responsibilities are usually quite broad, and individuals in these roles typically possess strong organizational and communication skills. While much of the work done by a **legal assistant is not public-facing**, it is still important they be able to effectively handle intraoffice communications as well as effectively dialogue with clients and others in the legal field.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ⓒ & Trademark™ & Patented 2030 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

### What is a paralegal?

A paralegal is a type of legal assistant who has received specialized education and training in legal procedures and practices, often with a college degree. Paralegals are often required to hold a degree in paralegal studies or a related field, and may also be certified by a professional organization. While some of the work may be the same as that of a legal assistant, **paralegals have a larger focus on legal tasks** such as conducting legal research, drafting legal documents, interviewing witnesses, case preparation, and assisting with trial preparation. Paralegals are not authorized to provide legal advice or represent clients in court, but they are an essential part of the legal team and help to ensure that cases are prepared effectively and efficiently. They have higher credentials than a legal assistant.

### What does a paralegal do?

A paralegal, according to the **American Bar Association (ABA)**, refers to a *"person, qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible."*

The position largely focuses on the research and paperwork directly related to litigation. In order to do so effectively, a paralegal should have a basic understanding of the litigation process and relevant terminology. To that end, paralegals are often tasked with more **substantive research work**, which without the services of such, would need to be done by an attorney. They are also asked to prepare documents, draft notices related to discovery proceedings, and can even interview clients. However, paralegals are not licensed to provide legal advice nor are they licensed to practice law. As such, they cannot represent anyone in court, sign a pleading, or take a deposition.

**Source:** https://legal.thomsonreuters.com/blog/legal-assistant-vs-paralegal-the-differences/

39. Due to her lack of education and training, Ms. Corbin made numerous mistakes in communication. One such example was in the original filing in which she misspelled Ms. Khan's last name. In financial matters where every detail is critically important, this is a significant issue:

**Emailed dates 04/10/2025 at 11:08 AM:**

# In re: Nuzhet Kan Chapter 13 Case No 24-13523-RG HEARING 05/21/2024 PLEASE READ THE ATTACHED LETTERS
1 message

---

**Deblyn Corbin** <dcorbin_fitzgeraldpc@yahoo.com>                    Wed, Apr 10, 2024 at 11:08 AM
To: Dr. Khan

*Deblyn Corbin, Legal Assistant*
*Fitzgerald & Associates*
*649 Newark Avenue*
*Jersey City, NJ 07306*
*Phone 201-533-1100*
*Fax 201-533-1111*

Image of email:

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark™ & Patented ℗® ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

**In re: Nuzhet Kan Chapter 13 Case No 24-13523-RG HEARING 05/21/2024 PLEASE READ THE ATTACHED LETTERS**

1 message

**Deblyn Corbin** <dccrbin_fitzgeraldpc@yahoo.com>                                        Wed, Apr 10, 2024 at 11:08 AM

*Deblyn Corbin, Legal Assistant*
*Fitzgerald & Associates*
*649 Newark Avenue*
*Jersey City, NJ 07306*
*Phone 201-533-1100*
*Fax 201-533-1111*

--------------------------------------------------------------
Confidential Attorney Client Communication/Attorney Work Product. This electronic mail message and any attachments are intended only for the use of the addressee(s) named above and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not an intended recipient, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. Moreover, any inadvertent disclosure shall not compromise or waive the attorney-client privilege as to this communication or otherwise. If you received this e-mail message in error, please immediately notify the sender by replying to this message or by telephone at (201) 533-1100 and then permanently deleting the material received. Thank you.
--------------------------------------------------------------

**This Firm is a Debt Relief Agency as Defined by 11 U.S.C. § 527. We help people file for bankruptcy.**

3 attachments

📎 **4.10.24 creditors meeting instructions to client.pdf**
1668K

📎 **4.10.24 petition cover letter.pdf**
127K

📎 **petition.pdf**
3440K

40. Mr. Fitzgerald expressed anger at having spent more than 40 hours on the case.

41. Mr. Fitzgerald demanded constant assurance that he should continue to be retained.

42. Mr. Fitzgerald made comments regarding Ms. Khan's mental health. **Mr. Fitzgerald is NOT a qualified medical health professional and has not medical education or expertise.**

43. **Mr. Fitzgerald called Ms. Khan "weird".**

44. Mr. Fitzgerald insulted Ms. Khan on several occasions both in writing and in person in front of his staff.

45. On **05/06/2025,** Mina sent his signed documents to Ms. Khan.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark ™ & Patented 2000 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



46. Ms. Khan forward Mina's documents to Ms. Corbin.

47. Ms. Corbin notified Ms. Khan, not Mina, that a page had gotten cut off. Ms. Corbin did not contact Mina and instead asked Ms. Khan to obtain the documents from Mina and send to her.

48. Therefore, Ms. Khan was following the same procedure as before. She requested the document from Mina and forwarded Mina's document to Ms. Corbin.

49. ~~Instead~~, Ms. Corbin previously asked Ms. Khan to resubmit Mina's documents.

50. On **05/21/2025**, Mr. Fitzgerald made apologies for delayed response and political statements. This clearly demonstrates a personal agenda. Again, one that was not disclosed prior to being retained.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ™ & Trademark™ & Patent© 2011, ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

---------- Forwarded message ----------
From: **Nick Fitz** <fitz2law@gmail.com>
Date: Wed, May 21, 2025 at 4:11 PM
Subject: Re: realtor agreement - signed
To: ~~Nuzhet~~ <~~redacted~~@gmail.com>
Cc: Nicholas Fitzgerald <nickfitz.law@gmail.com>, Nadia Loftin <nadiafinancial@gmail.com>

HI:

I wish to apologize for taking so long to get back to you -- I think that Ms. Corbin likely already responded.  The retention of your realtor was approved -- and you should now have her actively market your home for sale.  Hopefully the real estate market will remain strong before a certain man with an orange face destroys our economy.

Kind regards,

Nick Fitzgerald

On Mon, May 5, 2025 at 5:36 PM ~~Nuzhet~~ <~~redacted~~@gmail.com> wrote:
> Hi,
>
> I didn't receive anything from Ms. Corbin. Any updates?
>
> Nuzhet
>
> On Sat, May 3, 2025 at 7:22 PM Nick Fitz <fitz2law@gmail.com> wrote:
>> HI:
>>
>> I got it. On Monday May 5, 2025 my legal assistant, Ms. Corbin, will contact you -- we need you and the real estate broker to sign some legal papers --- and please do not list the property for sale yet --- please wait until we obtain an official order authorizing the sale.
>>
>> Kind regards,
>>
>> Nick
>>
>> On Fri, May 2, 2025 at 9:03 AM True Goal <~~redacted~~> wrote:
>>> Good morning Nick / Nadia,
>>>
>>> Attached is the signed realtor agreement. Could the realtor list the house today?
>>>
>>> Nuzhet

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ™ & Trademark ™ & Patented 2020, ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

On Monday, December 23, 2024, Nick Fitz <fitz2law@gmail.com> wrote:
Hi:

The steps required are:

a) I have to get the real estate broker officially retained by the bankruptcy court. I need to have a copy of the signed real estate brokerage agreement. I do not need the broker to contact me directly -- but both you and the broker must sign papers to get her officially retained. It will take about 2 weeks to get the broker approved.

b) I need you to hire a separate lawyer to represent you at the closing. You can hire anyone you choose. I need you to sign a retainer agreement with that lawyer and I need a copy of that agreement. Then the procedure is the same as "a" above -- We have to get that lawyer hired to represent you at the closing. It will take about two weeks to get the lawyer approved.

c) When you find a buyer for the property, I will need to have a copy of the contract of sale and I will need to make a motion to approve the sale. It will take about 30 days to get the sale approved -- at this point both the broker and your closing attorney should long since have been approved.

After the closing your bankruptcy case will be over ---the mortgage will be paid off -- any money owed to the trustee will be paid off -- and you will receive the net proceeds.

As to your bankruptcy case, we still have the outstanding issue of the "Travel Rewards Visa Business" account debt.   I am hoping that they drop the claim.  We will just have to wait to see what happens.

Kind regards,

Nick

On Mon, Dec 23, 2024 at 11:02 AM ~~Rao Goza~~ wrote:
Nick / Nadia,

Pray you're well. I'd like to sell the house. I have a realtor in mind and would like to have it listed on 1/1/25 or as soon as possible.

1) What are the steps and/or forms required?

2) Should the realtor contact you directly?

3) How long does the approval process take by the Bankruptcy Court?

Nuzhet

51. In October when Ms. Khan requested a modification, Mr. Fitzgerald and Ms. Corbin **advised Ms. Khan that she would be able to sell her home WITHOUT a realtor and have TWELVE (12) months to do so.**

52. During that meeting to modify the plan, **Mr. Fitzgerald wholeheartedly agreed that it would be better not to have a realtor** in order to save the hefty commission that realtors charge.

53. That in-person meeting was **the last communication Ms. Khan received electronically regarding the future sale of her property.**

54. **On 12/08/2025,** Mr. Fitzgerald did a complete turnaround. With this short notice, Mr. Fitzgerald advised Ms. Khan that her bankruptcy case was scheduled to be dismissed on 12/11/2025 i.e. in 3 days.

55. **On 12/08/2025, Mr. Fitzgerald informed Ms. Khan that she was required** to hire a realtor by 12/11/2025 i.e. in 3 days.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ™ & Trademark™ & Patented 2036 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

56. On 12/10/2025, Mr. Fitzgerald filed Motion to be relieved on i.e. the day before our in-person meeting.

57. On **12/11/2025**, Mr. Fitzgerald met in-person with Ms. Khan and did not disclose that he had already filed a motion to be relieved as counsel. A summary of that meeting is included

### BACKGROUND / CONTEXT:   GARDEN STATE REALTY: PREDATORY LENDING, IMPROPER CREDENTIALS AND UNETHICAL BEHAVIOR

58. On or around 4/29/2020 i.e. in midst of **pandemic** when rates reached historic low, Ms. Khan requested refinance from Columbia Bank. Columbia Bank is the originator of her mortgage and is licensed and credentialed to do business in NJ as a residential financial institution.

59. Garden State Realty is not licensed with the Department of Banking and Insurance as a residential financial institution.

60. On or around 4/29/2020, the 15 YR fixed was **3% which was lower than Ms. Khan's 3.75%**

Columbia Bank rates on 04/29/2020

| | | | | |
|---|---|---|---|---|
| 15 Year Fixed | 0 PT | 3.000% | 3.051% | 180 Payments of $6.91 |
| | 1 PT | 2.875% | 3.123% | 180 Payments of $6.85 |
| 10 Year Fixed | 0 PT | 2.875% | 2.950% | 120 Payments of $9.60 |
| | 1 PT | N/A | N/A | N/A |

61. Representatives from Columbia Bank significantly delayed and subsequently NEVER provided refinance information despite **significant potential for savings for Ms. Khan.** This is **predatory lending.**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright & Trademark & Patent 2020: ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



On Monday, September 28, 2020, Dr. Khan wrote:

بسم الله الرحمن الرحيم

PRIVILEGED & CONFIDENTIAL: For intended recipients only: Cannot be used for marketing and/or promotional materials. No part of this document may be reproduced, stored in a retrieval system, used in a spreadsheet, or transmitted in any form or by any means—electronic, mechanical, photocopying, recording, or otherwise—without expressed written permission.

Assalaam alaikum & good morning,

Who should be my main point of contact between Carolyn / Carlotta / Brian?

Carolyn: Frustrated and surprised that you/Columbia Bank sent notice of late payment when I am waiting on information from Claire / Columbia Bank.  What allows Columbia Bank to get away with not honoring their word/commitment yet charge customers excessive fees and/or fines during a literal pandemic?

Claire: What is the new ETA for this?

Dr. Khan

62. On or around **09/07/2021**, Kondaur Capital informed Ms. Khan, via email, that the mortgage was sold **yet again.**

Columbia #▓▓99139 // Kondaur ▓▓8129 // Nuzhet Khan // 142 Romaine Ave, Jersey City, NJ 07306

--------- Forwarded message ---------
From: Christopher Lai <clai@kondaur.com>
Date: Tue, Sep 7, 2021 at 1:23 PM
Subject: Columbia ▓▓▓139 // Kondaur ▓▓8129 // Nuzhet Khan // 142 Romaine Ave, Jersey City, NJ 07306
To: Dr Khan
Cc: David T-Cox <cox0529@hotmail.com>

Hello Nuzhet,
Kondaur is no longer your mortgage company – your new mortgage company is Garden State Prominent Realty LLC. Please contact your new representative, David Cox, 856-495-6840. He has been trying to reach you in order to help you.

Please call David at your earliest convenience.

Thanks,
Chris

Christopher Lai
Asset Manager

Kondaur Capital, LLC

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ℠ & Trademark ™ & Patented 2020. ALL RIGHTS RESERVED.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

63. Since receiving email from Kondaur Capital, Ms. Khan immediately contacted the MAIN point of contact provided by Kondaur Capital: David. Cox.

64. The sole email from Mr. Lai is the only documentation ever provided regarding the loan. Meaning, neither Kondaur Capital or Garden State Prominent Realty notified Ms. Khan that her loan was obtained.

65. Federal and state laws have very specific guidelines on timely distribution of materials of mortgage information. Since Garden State Prominent Realty is NOT properly licensed, they did not follow the federally mandated requirements.

66. On or around **09/07/2021**, Ms. Khan has immediately contacted Garden State Prominent Realty, LLC via D. Cox and/or Michael/ Ackerman and/or Greg "Zeke" Ortiz.

67. **Since initial email (2022):** Ms. Khan had numerous and lengthy conversations with D. Cox and/or M. Ackerman regarding loan modifications, loan assistance programs, etc. Mr. Ackerman was the attorney for Garden State Prominent Realty.

68. During court proceedings, M. Ackerman stated that D. Cox does NOT represent Garden State. **That is contrary to all previous communications. M. Ackerman was unethical by not disclosing this prior to court proceedings since M. Ackerman was copied on ALL communication between Ms. Khan and D. Cox.**

69. **M. Ackerman blatantly lied during Foreclosure proceedings. He denied having been aware of D. Cox, again despite being copied on every email. M. Ackerman used deceptive and dishonest legal practices to obtain Final Judgement for Garden State Prominent Realty.**

70. While representing Garden State Prominent Realty, M. Ackerman repeatedly refused to provide information and/or complete payment instructions on a timely basis.

71. On or around 02/08/2022, Ms. Khan contacted M. Ackerman **again** regarding loan modifications, loan assistance programs, and/or reinstatement. **Note:** During court proceedings, M. Ackerman stated that D. Cox does NOT represent Garden State Financial. **However, M. Ackerman was copied on these emails and did NOT make any such assertion regarding D. Cox prior to Foreclosure Court Proceedings in front of Judge Jablonski at Hudson Superior Court, Jersey City, NJ 07306**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyrights & Trademarks & Patents 2023 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

David T-Cox
D    to me, Michael, zeke.Ortiz@gardenstateprominentrealty.com, +1
Feb 8, 2022  Details

Good Afternoon Dr. Khan,

It was a pleasure speaking with you today. Michael, please send Dr. Khan all documents that deal with the transfer of mortgage from Kondour to Garden State. Dr. Khan,  Michael Ackerman's information is listed below for you and your attorney to contact.

Dr. Khan, Zeke, and I are looking forward to speaking with you on Zoom or conference call on 2/15 to come up with a resolution. If you have any questions please feel free to contact Zeke or me with any concerns. You have a safe and very Bless week and we will talk next week.

Zeke- (201) 451-4500- Office
        (201)-936-6105- cell

My contcact- David T-Cox- Cell-856-495-6840

Michael Ackerman- 973-464-7063

Thank You and God Bless

David T-Cox
856-495-6840

72. On or around **November 30, 2022**, Ms. Khan filed a complaint with **Department of Banking and Insurance (DOBI)** regarding the predatory lending and/or intentional miscommunication and/or failure to communicate by **M. Ackerman (DOBI Complaint #: 43834 and 43835 and 22-023174: Kunle Oyeledun.)**

73. M. Ackerman failed to disclose DOBI Complaint to the Court.

74. On or around **November 15, 2022**, Greg Ortiz, representing Garden State, responded to the DOBI complaint.

   a. In his response to the DOBI complaint, Greg Ortiz denies knowledge of the significant damage caused by Hurricane Ida.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright © & Trademark ™ & Patented 2020 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

**From:** Zeke Ortiz <zeke.ortiz@gardenstateprominentrealty.com>
**Sent:** Tuesday, November 15, 2022 3:23 PM
**To:** Oyeledun, Kunle [DOBI] <kunle.oyeledun@dobi.nj.gov>
**Subject:** Re: [EXTERNAL] Requests for Garden State: Docket No. 22-023174

Dear Sir / Madam,

In response to your e-mail of October 27, please be advised that Garden State is not aware of the damage to the property. Hurricane Ida occurred before we had purchased the note and mortgage from Kondaur mortgage by way of an assignment of mortgage dated 9/24/21. In the records that we received from Kondaur we find no indication that Kondaur , or any other prior mortgage servicer had been notified of any hurricane loss or insurance claim.

Since Kondour , and its predecessors , had a provision in its mortgage that the property must be insured and the mortgagee had to be named as a mortgagee/ loss payee on the policy, they should have been made aware of any loss.

It is important to appreciate that the mortgage on the property has been in default since October of 2020 for a payment missed on September 1, 2020. There has not  been any payments made, or offered , since the September 2020 payment was missed, and the loan has gone into default.

As a private Lender we have not program for loan modifications. While we are happy to work with Dr Khan on other opportunities for her to transition to other housing , we cannot offer a loan modification . Additionally, in all of the communications that we have seen from Dr. Kahn we have not seen an ability to make any payments. It is

75. M. Ackerman **failed to disclose to the Court** the response by Greg Ortiz.

76. On or around July 1, 2023, Ms. Khan sent the **monthly payment to Madison Management Mortgage** Servicer in the **amount of $3558.30**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark ™ & Patented 2022 ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

## BANK OF AMERICA

**Regular Checking - 6454 : Account Activity**

**Transaction details**

| | |
|---|---|
| Posting date | Jul 6, 2023 |
| Description | Madison Management Services, LLC Bill Payment |
| Type | Bill Pay |
| Status | Cleared |
| Amount | -$3,558.30 |
| Description | Madison Management Services, LLC Bill Payment |
| Merchant name | MADISON MANAGEMENT SERVICES, LLC |
| Transaction category | Uncategorized: Uncategorized |

77. On or around **July 13, 2023**, Ms. Khan again requested reinstatement details and **specific payment instructions** i.e., acceptable payment methods.

78. On or around **July 13, 2023**, Madison Management responded to request for reinstatement details and **specific payment instructions** i.e., acceptable payment methods.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark™ & Patented 2020; ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023



79. M. Ackerman's response to the email **did NOT provide any specific payment instructions**. In fact, his email was vague, filled with typos and not considered final according to his own words.

80. Ms. Khan received tentative approval for **NJ ERMA: Emergency Response for $75,000** pending Garden State participation in the program.

81. M. Ackerman directed the Madison Management (mortgage servicer) to **reject participation in NJ ERMA** thereby **refusing to accept FEDERAL EMERGENCY FUNDS potentially in the amount of $75,000 NJ ERMA Assistance**.

82. M. Ackerman directed the mortgage servicer to **reject the monthly mortgage payment**.

83. Madison Management sent notice to Ms. Khan, via email, that M. Ackerman refused monthly mortgage payment and the check *will* be returned.

84. Ms. Khan requests that M. Ackerman and/or Garden State follow up with Columbia Bank regarding mortgage **paid in full and IMPROPER DISCHARGE and/or SALE OF MORTGAGE in violation of the Fair Foreclosure Act.**

85. Creditor failed to provide a payoff amount in a timely manner and sabotaged a CASH OFFER.

86. **Ms. Khan obtained a CASH OFFER that Creditor sabotaged by not providing financial details as requested and required by law.**

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ™ & Trademark ™ & Patented 2020; ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

87. Since Ms. Khan has equity in the property, there are no facts to support Mr. Fitzgerald's statement.



88. As of this writing, Creditor has still not provided the requested financial details.

89. Dr, Khan requests **Ethics Committee** investigation of Mr. Fitzgerald for lying and/or intentionally misrepresenting information to the Courts regarding Ms. Khan's character, failure to disclose his declining mental health, and failure to disclose his lack of technology available to him and/or his staff.

90. Ms. Khan requests **Hudson County Bar** investigation into Mr. Fitzgerald's combative behavior and charge of inadequate counsel.

91. Ms. Khan requests one year to sell her home and leaves to her discretion whether she sells it herself or hires an attorney or accept a cash offer.

Thank you for your time and attention to this matter.

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ™ & Trademark™ & Patented 2020; ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

Nuzhet Khan

| Name | Reference and/or Account Number | Contact Phone | Contact Information (Email and/or Address and/or Main Contact) |
|---|---|---|---|
| **Court Mailing Address** | 24-13523 RG | | Clerk: United States Bankruptcy Court<br>King Federal Building<br>50 Walnut St<br>3rd Floor<br>Newark, NJ 07102 |
| **Trustee Payment Address (different from Mailing Address)** | 24-13523 RG | | Tennessee |
| | | | |
| **Trustee Mailing Address (different from Payment Address)** | 24-13523 RG | | Marie-Ann Greenberg<br>**Chapter 13 Standing Trustee**<br>30 Two Bridges Road, **Suite 330**<br>Fairfield, NJ 07004-1550 |
| **Attorney Nicholas Fitzgerald** | | | Attorney for Debtor ID Number: **NF / 6129**<br><br>**Fitzgerald & Associates**<br>649 Newark Avenue<br>Jersey City, NJ 07306 |
| | | | |
| | | | |
| | | | |
| **Hudson County Superior Court Foreclosure Docket** | F-217-22 | Superior Court Clerk: 609-421-6100 | Appeal-trans.mailbox@njcourts.gov<br><br>Devonne.lowry@njcourts.gov<br>(last received on 09/13/23)<br><br>Nicholas.defuria@njcourts.gov<br><br>Scco.mbx@njcourts.gov |
| | | | |
| **Sheriff Sale** | 52791 | 201-795-6300  xt 7233 or 7312 | foreclosures@hcnj.us |
| | | | |
| **Madison Management** | 6711 | 877-563-4164  xt 117 | jpoole@madisonmanagement.net |
| | | | |
| | | | |
| | | | |

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright © & Trademark™ & Patented 2020; ALL RIGHTS RESERVED

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023

| | | | |
|---|---|---|---|
| **NJ ERMA Application** | ~~Closed~~ Denied | 609-256-7623 | aramirez@njhmfa.gov<br>Madison Management refused to participate in ERMA. |
| **NJ Harp Disaster Relief** | Filed in 2023. As of 2025, no response | 609-292-3750 | DisasterRecoveryAndMitigation@dca.nj.gov |
| | | | |

PRIVATE PRIVILEGED & CONFIDENTIAL: ® © ™ (P) 2023 Copyright ® & Trademark™ & Patented 2026 ALL RIGHTS RESERVED